NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000803
11-SEP-2014
08:27 AM

NO. CAAP-11-0000803

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


TY D. BOYDSTUN, Claimant-Appellant, v.
POLYNESIAN CULTURAL CENTER, Employer-Appellee,
and
SEABRIGHT INSURANCE COMPANY, Insurance Carrier-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2008-528 (2-07-01585))


SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, and Reifurth and Ginoza, JJ.)

On July 28, 2006, while working as a security guard for
the Polynesian Cultural Center ("Employer"), Claimant-Appellant
Ty D. Boydstun ("Boydstun") stepped and tripped on uneven ground.
He experienced low back pain following the incident. On January
30, 2007, Employer filed a "WC-1 Employer's Report of Industrial
Injury" stating that Boydstun injured his back using a grass
blower on January 27, 2007. The actual date of the event when
Boydstun injured his back continues to be in dispute. Employer
did not deny liability for the work injury, but challenges the
extent of the alleged injury.

On May 12, 2008, Boydstun filed a "Form WC-5,
Employee's Claim for Workers' Compensation Benefits". He
described his injury as "[two] bulging discs in lower back
causing severe pain [and] indiscriminate collapse of left leg."
He noted the date of the accident as July 2006, and stated that
the disability start date was January 27, 2007. As his reason

for filing, he wrote: "My doctor submitted a treatment form (program) that has been virtually ignored, aside from a few physical therapy treatments. Original treatment program was submitted [approximately] 1 year ago."

Boydstun appeals from the October 12, 2011 Decision and Order ("Decision and Order") of the Labor and Industrial Relations Appeals Board ("Board" or "LIRAB"), which affirmed in part, modified in part, and reversed in part the October 24, 2008 Decision of the director of the Disability Compensation Division ("Director"), in which the Director concluded, among other things, that "the claimant is not entitled to further treatment as claimant's injury of 1/27/2007 resolved by 6/20/2007."

Boydstun appears to challenge the majority of the findings of fact ("FOF") contained in the Board's Decision and Order.[1] However, some of his challenges involve elaborations or clarifications of the Board's findings rather than actual challenges.[2] He also appears to challenge the Board's conclusions of law ("COL").

Boydstun appears to contend that (1) any identification of January 27, 2007 as the date of his injury is clearly erroneous (FOF 2, 3, 5, 12, 18, 20, and 24-27; COL 1); (2) many of the other background findings articulated by the Board are clearly erroneous (FOF 6, 8, 13-19, and 20); (3) the Board erred in concluding that Employer is not liable for further temporary total disability ("TTD") after February 26, 2007 (FOF 21-27; COL 2); (4) the Board's conclusion that Boydstun's lower back condition amounts to only 5% permanent partial disability ("PPD") is based on erroneous findings of fact (FOF 28 and 29; COL 3);

---

[1] Boydstun's opening brief fails to comply in many respects with the requirements of Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b). Failure to comply with HRAP Rule 28(b)(4) is alone sufficient to affirm the Board's Decision and Order. *See Morgan v. Planning Dep't, Cnty. of Kauai*, 104 Hawai'i 173, 180, 86 P.3d 982, 989 (2004) (citing *Kawamata Farms, Inc. v. United Agri. Prods.*, 86 Hawai'i 214, 235, 948 P.2d 1055, 1076 (1997)). However, taking into consideration that Boydstun is pro se, we note that it is the policy of this court "to permit litigants to appeal and to have their cases heard on the merits, where possible." *O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994). Thus, we address Boydstun's arguments on the merits to the extent that they are discernible.

[2] It does not appear that Boydstun is challenging FOF 1, 4, 7, 9, 10, or 11.

and (5) he is entitled to attorneys' fees.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we affirm the Decision and Order and resolve Boydstun's appeal as follows:

(1)    Boydstun contends that the Board mis-identified the date of his work injury as January 27, 2007.  Assuming for the sake of argument that the Board's identification of January 27, 2007 as the injury date was erroneous, Boydstun does not explain and we are unable to discern how the date affected the Board's ultimate decision regarding Byodstun's entitlement to medical benefits or its other conclusions of law. Therefore, any alleged error is harmless.[3/]  *See, e.g., Kahawaiolaa v. United Airlines, Inc.*, 2012 WL 54497, at *2 (Haw. Ct. App. Jan. 9, 2012) ("Regardless of whether LIRAB's FOFs 14 and 15 are clearly erroneous, any error was harmless."); *Kawamoto v. NHC, Inc.*, 2009 WL 3350309, at *5 (Haw. Ct. App. Oct. 19, 2009) (stating that a challenged LIRAB finding played no "meaningful role" in LIRAB's determination regarding claimant's injury and thus any potential error was harmless).

(2)    The Board's findings that provide background for its Decision and Order and support for its conclusion that Boydstun was entitled to compensation for medical care, services, and supplies as the nature of his work injury requires are consistent with the various MRI results, physician medical reports, letters releasing Boydstun to work full duty, the WC-5 form, and testimony of the parties.  Therefore, they are not clearly erroneous.

We specifically affirm the Board's findings crediting Dr. Leonard N. Cupo's opinion, because the record contains substantial evidence supporting his opinion.  *In re Water Use Permit Applications*, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)

---

[3/]    In his challenge to FOF 5, Boydstun contends that he was not able to recover certain documents from Employer in connection with the preparation of his case.  In light of our decision here, inasmuch as Boydstun indicates that these documents would relate to the identification of the date of the injury, we need not further address the issue.

(substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion" (quoting *Leslie v. Estate of Tavares*, 91 Hawai'i 394, 399, 984 P.2d 1120, 1125 (1999)). Dr. Cupo's report described in detail his review of all Boydstun's available medical records, including the reports by Dr. Christopher Brace, the MRI and other tests that were conducted, as well as records from Boydstun's more recent visits to mainland physicians. Under the circumstances, Dr. Cupo's report constituted substantial evidence upon which the Board could rely in making its ultimate conclusion regarding Boydstun's condition and compensation. Therefore, we affirm FOF 19 and 20.

(3) With respect to the payment of TTD, the Board concluded that "Employer is not liable for further TTD after February 26, 2007 and through June 4, 2010." Accordingly, it appears that the Board affirmed the TTD payments from February 2, 2007 through February 26, 2007, and thus we review the Decision and Order as to its denial of TTD payments from February 26, 2007 through the medical reports submission deadline of June 4, 2010.

First, we address the "gap periods", for which there are no disability certifications apparent in the record. The Board found at FOF 24 that "[t]he record contains no contemporaneous medical certification of total disability from work . . . from February 27, 2007 to February 19, 2008, from April 1, 2008 to April 3, 2008, and after May 15, 2008 through June 4, 2010, the medical reports deadline." Based on the chronology reflected in Dr. Brace's Work Status reports [4] and Dr. Cupo's independent medical examination ("IME"), we agree that there were no available certifications supporting a TTD award from February 27, 2007 through February 19, 2008 because the two Work Status Reports completed during that period, and Dr. Brace's December 19, 2007 letter, do not indicate that Boydstun was unable to work.

The two other "gap periods" indicated by the Board are not as clearly delineated. Even taking ambiguities in the record

---

[4]    This chain of events is reflected in the Board's FOF 25 and 26, and Boydstun's challenge to that finding is therefore without merit.

into account, however, it appears that the Board did not err in finding that the record contained no contemporaneous medical certifications of total disability for April 1, 2008 to April 3, 2008 and from May 15, 2008 through June 4, 2010.

HRS § 386-96 governs the reports of physicians and requires that one rendering "service to an injured employee shall make a report of the injury and treatment on forms prescribed by and to be obtained from the [Department of Labor and Industrial Relations]," and that "[i]nterim reports . . . shall be made at appropriate intervals to verify the claimant's current diagnosis and prognosis[.]" HAW. REV. STAT. § 386-96(a)(2) (Supp. 2013). The statute further requires that the reports contain "the dates of disability, any work restrictions, and the return to work date." Id. Similarly, Hawaii Administrative Rules ("HAR") § 12-15-80(a)(3)(E) provides that "[i]nterim WC-2 reports shall be submitted monthly . . . to the employer" and include "[d]ates of disability, work restrictions, if any, and return to work date." Haw. Admin. R. § 12-15-80(a)(3)(E) (2004).

Because of these requirements, it was reasonable for the Board to credit the return to work dates provided in Dr. Brace's reports, rather than any generalizations about reevaluation or further treatment, in determining specific dates for which TTD compensation is appropriate. While "[c]laimants should not be denied benefits under Hawaiʻi workers' compensation law simply because their physician failed to properly enter the requisite report in the prescribed manner[,]" the Board "needs sufficient evidence to render a TTD decision." Custino v. State, Dep't of Transp., 2014 WL 2007953, at *5 (Haw. Ct. App. May 15, 2014). Accordingly, there was insufficient evidence supporting TTD benefits for the "gap periods" identified by the Board, and we affirm the Board's determination at FOF 24 that there were no contemporaneous medical certifications for those periods.

Second, we address the Board's conclusions regarding the sufficiency of the certifications that were submitted, specifically for the dates of February 20, 2008 to March 31, 2008, and April 4, 2008 to May 14, 2008.

5

Although the Board found that there *were* medical certifications from Dr. Brace in the record for the periods of February 20, 2008 to March 31, 2008 and April 4, 2008 to May 14, 2008, the Board did not credit those certifications. With respect to the February 20, 2008 disability certificate, the Board noted that it did not identify the date of injury,[5] that Boydstun had been released to work for almost a year and had confirmed at trial that his back was fine, and that Dr. Brace's diagnosis of lumbar radiculopathy as the reason underlying the disability had been ruled out by MRI and EMG testing. On appeal, we defer to the Board's assessment of the credibility of the witnesses and weight of the evidence, *Moi v. State, Dep't of Public Safety*, 118 Hawai'i 239, 242, 188 P.3d 753 756 (App. 2008), and Boydstun has not provided adequate support for his argument that the Board erred in its credibility determination about Dr. Brace's February 20, 2008 recommendation.

As to the disability certification from April 4, 2008 to May 14, 2008, the Board noted that this off-duty certification was "despite [Boydstun's] report that his left leg pain resolved by April 4, 2008." Again, we defer to the Board's assessment of the credibility of Dr. Brace's recommendation as compared to Boydstun's report of his condition, and uphold the Board's discrediting of Dr. Brace's off-duty recommendation. As such, we affirm the Board's determinations as to the validity of the disability certifications for February 20, 2008 to March 31, 2008 and April 4, 2008 to May 14, 2008.[6]

In sum, the Board properly determined that (1) from February 27, 2007 to February 19, 2008, there were no certifications, (2) the certification from February 20, 2008

---

[5] With respect to the lack of an injury date, Boydstun argues that "[i]t is possible that Dr. Brace overlooked or just assumed all parties were on board with the date of injury." Here, however, it appears that the Board discredited Dr. Brace's certification for a number of reasons in addition to the lack of a specified injury date.

[6] In contesting the Board's findings on this issue, Boydstun asserts that his current physicians have prescribed surgery, therapy and medication to treat his ongoing condition. However, the Board did not foreclose any particular treatment option. It simply noted that Boydstun had not submitted any treatment plans that it could consider, and it found that the certifications had not been submitted as required in order to justify an award of TTD benefits.

through March 31, 2008 was discredited, (3) from April 1, 2008 to April 3, 2008 there was no certification, (4) the certification from April 4, 2008 to May 14, 2008 was discredited; and (5) there were no valid certifications from May 15, 2008 onward.

(4) At FOF 29, the Board credited Dr. Cupo's impairment rating of 5% permanent partial impairment of the whole person for Boydstun's lumbar spine and, at COL 3, deemed Boydstun entitled to that level of PPD compensation for his low back condition. In contesting this conclusion,[7] Boydstun alleges that "Dr. Cupo's prediction of 5% does not come close to my loss in mobility."

Dr. Cupo's determination of a 5% whole-person impairment attributable to the lumbosacral spine work injury was based on "medical records available for review" up through September 1, 2009, and the American Medical Association Guide, Fifth Edition. HAR § 12-10-21(a) provides that "[i]mpairment rating guides issued by the American Medical Association . . . may be used as a reference or guide in measuring a disability." HAW. ADMIN. R. § 12-10-21(a) (1981); see also *Cabatbat v. Cnty. of Hawai'i, Dep't of Water Supply*, 103 Hawai'i 1, 6, 78 P.3d 756, 761 (2003) (confirming that HAR § 12-10-21 permits reliance on the American Medical Association guides, although their use is not mandated to the exclusion of other guides).

Although Boydstun disputes the validity of Dr. Cupo's conclusion,[8] and the Board's reliance on that conclusion, we reiterate that appellate courts

---

[7]    This section also addresses Boydstun's challenge to FOF 28.

[8]    In his Opening Brief, Boydstun specifically challenges FOF 28 on the grounds that "[a]s of September 2009, my current physicians, some of the best Spine Doctors and Surgeons in North America, arguably the world, have prescribed surgery, therapy and medication for the remainder of my life." He also requests a functionality exam to determine his loss of mobility "conducted by a physician of [his] doctor's choice with relevant compensation."

With respect to these contentions, we note that Dr. Cupo's IME specifically credited the examination of Boydstun's lumbosacral spine by orthopedist Dr. Charles Banta on September 1, 2009. Dr. Cupo noted that the "[e]xamination by Dr. Banta on 9/1/09 revealed muscle spasm of the lower lumbar spine and left hip. There was no motor or sensory deficit, reflex asymmetry, or positive sciatic nerve tension signs of the lower extremities." Thus, in making his determination, Dr. Cupo in fact referenced a recent examination by a mainland physician of Boydstun's choice.

decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.

*Nakamura*, 98 Hawai‘i at 268, 47 P.3d at 735 (quoting *Igawa v. Koa Pancake House Rest.*, 97 Hawai‘i 402, 409-410, 38 P.3d 570, 577-78 (2001)). As noted before, the Board did not err in crediting Dr. Cupo's IME, and therefore we decline to second-guess the agency's crediting of Dr. Cupo's 5% impairment rating and affirm the Board's FOF 29 and COL 3.

(5) Boydstun requests that "[a]ny related attorney fees [be] covered in full." Inasmuch as Boydstun fails to suggest a basis for an award of attorneys' fees and we can find none, his request is without merit.

Therefore,

The Board's October 12, 2011 Decision and Order is affirmed.

DATED: Honolulu, Hawai‘i, September 11, 2014.

On the briefs:

Ty D. Boydstun,
Pro Se Claimant-Appellant.

Colette H. Gomoto,
for Employer-Appellee and
Insurance Carrier-Appellee.

Presiding Judge

Associate Judge

Associate Judge

8